JOSEPH E. LAMASTER, PLAINTIFF IN ERROR, v. GILBERT B. SCOFIELD AND ALLEN A. COWPERTHWAIT, EXECUTORS OF THE ESTATE OF WILLIAM FINDLEY, DECEASED, DEFENDANT IN ERROR.

1. **Jurisdiction of Courts of Equity:** MUTUAL ACCOUNTS. Under the code, discovery has ceased to be one of the objects sought in a court of equity. Jurisdiction, therefore, in cases of mutual accounts between the parties, cannot be maintained on that ground, and is restricted to cases which have their origin in intimate or confidential relations of the parties, and does not extend to ordinary cases of mutual accounts between creditor and debtor.

2. **Practice:** REFERENCE OF CAUSES. A purely legal action cannot be referred, except by consent of the parties, as neither party can be deprived of the right to a trial by jury in such cases. *Mills v. Miller*, 3 Neb., 94., cited and approved.

3. ――――: OATH OF REFEREE. The failure of a referee to take the oath required by law is a mere irregularity, that is waived by the parties proceeding to trial without objection on that ground.

ERROR from the district court of Otoe county.

IT was an action upon an account, a copy of which annexed to the petition, contains one hundred and thirty items, under one hundred and twelve different dates, from November, 1866, to December 31, 1872, and amounting to $10,960.65; and has twenty-six different credits, amounting to $8,332.26.

The sections of the civil code providing for the reference of causes are as follows:

Sec. 298. All or any of the issues in the action, whether of fact or law, or both, may be referred, upon the written consent of the parties, or upon their oral consent in court, entered upon the journal.

Sec. 299. When the parties do not consent, the court may, upon the application of either, or of its own motion, direct a reference in either of the following cases:

*First.* Where the trial of an issue of fact shall require the examination of mutual accounts, or where the account is on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account; in which cases the referees may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein.

*Second.* Where the taking of an account shall be necessary for the information of the court before judgment, in cases which may be determined by the court, or for carrying a judgment into effect.

*Third.* Where a question of fact, other than upon the pleadings, shall arise upon motion or otherwise, in any stage of an action.

Under this latter section the cause was sent to a referee, and upon his report and finding judgment was rendered against Lamaster, who brought the cause to this court by petition in error. Pending the argument here Findley died, and the cause was revived in the name of the administrators of his estate.

*Mason & Lehmann* (with whom was *J. L. Mitchell*), for plaintiff in error.

I. The first constitution of Nebraska, and the one under which this controversy arose, provides that "the right of trial by jury shall remain inviolate." An attempt of the legislature to abridge or impair it would

be nugatory. But the matter we have to determine is, what the constitution contemplates by " the right of trial by jury," inasmuch as this right is more comprehensive in some states than in others. As this is a state constitution, intended to prescribe the mode of government within the limits of certain territorial boundaries, we are bound to presume that it meant to maintain inviolate · the trial by jury as it had obtained within those limits. In short, that the right of trial by jury, as it was in the territory of Nebraska, should be continued inviolate in the newly formed state. The very phrase in which this provision of the constitution is embodied renders such a construction absolutely necessary. It proposes no change; in fact, it provides against any and all change, so that we must presume this right to have had existence in like manner as its continuance was stipulated for. It could not remain inviolate unless it had previously been so. From whence was this inviolate right obtained? Where are we to look to determine what it is? Certainly not to the legislative enactments of the territory, for inviolability is repugnant to their very nature; they are

> " Variable as the shade
> By the light quivering aspen made."

Each session brings with it innumerable amendments and repeals, everything within legislative limits is subject to alteration and even total abolition, and for whatever is inviolable, we must look beyond legislative control, to the paramount authority of the territory, the constitution of the United States. It may be objected that this is a mere quibble with forms, but forms are indicative of the nature of the substances. Moreover, our position is supported by authority. *Isom v. The Mississippi R. R. Co.*, 36 Miss., 300. *Work v. The State*, 2 Ohio State, 296.

Like considerations are suggested by the very nature

and necessity of the case.   Certainly the territorial gov-
ernment was not an absolute one; some limits there were
which it could not transcend.    The territories were the
wards, and were, under the tutelage of the general gov-
ernment, entitled to its protection and subject to its
dominion.   To it they owed their existence, and to it
they must render allegiance.   The organic act defined
alike their powers and duties.    See section 6, Organic
Act.   This act, by express terms, confined the legislative
power within the bounds of the federal constitution.
Whatever rights the citizen possessed under the consti-
tution of the United States, could not be impaired by any
act of the territorial government, and any act of that
government having such a tendency would be null and
void.   It follows, then, that the right of trial by jury, as
defined in the federal constitution, was a right enjoyed
by every citizen in the territory, and was *the right* which
the constitution of the state preserved inviolate.   In re-
spect to all the constitutional provisions and statutory
enactments applicable to this case, the history of Minne-
sota is identical with that of Nebraska.   In each, the
territorial legislature enacted this statute authorizing
references, and in each was the provision preserving
inviolate the right of trial by jury embodied in the first
constitution of the state, and any authoritative expression
of judicial opinion upon the subject under discussion in
that state is, by every rule of judicial construction, entitled
to great weight in this.   *Whallon v. Bancroft,* 4 Minn.,
109.   *The Saint Paul and Sioux City R. R. Co. v.
Gardner,* 19 Minn., 132.   See, also, *Averill Coal and
Oil Co. v. Verner,* 22 Ohio State, 378.   *Johnson. v.
Wallace,* 7 Ohio, 392.   *Grim v. Norris,* 19 Cal., 140.
*Williams v. Benton,* 24 Cal., 424.    *Board of Educa-
tion v. Scoville,* 13 Kan., 32. .  *McMurtin v. Bingham,*
27 Iowa, 234.    *United States v. Rathbone,* 2 Paine C.
C., 579.   *Plimpton v. Somerset,* 33 Vermont, 283.

II.  Another error assigned is the neglect of the referee to take the oath prescribed by law.  The provision of the statute upon this point is:  " The referees *must* be sworn or affirmed well and faithfully to hear and examine the cause and to make a just and true report therein according to the best of their understanding."  Chap. 57, Sec. 305, p. 576, Gen. Stat. of 1873.

That the referee was not sworn is admitted, but it will be urged that the plaintiff in error, by proceeding, waived his right to object to the omission; and in support of this position will be cited the authority of the New York practice reports.    That the cases in those reports are not in point must be admitted on comparison of the codes of New York and Nebraska.    The 2 R. S. of N. Y., 384, § 45, was a provision similar to the one quoted above from the code of Nebraska; but says a distinguished law writer of the former state, "It may be doubted whether this provision applies to any reference under the code, particularly to a reference to hear and determine."  Hoffman on Referees, p. 24.    The cases relied on are not at all analogous to the one at bar.    See *Howard v. Sexton*, 1 Denio, 440.    *Whalen v. Supervisors*, 6 How. Pr., 278. *Keator v. Ulster*, 7 How. Pr., 41.    But whoso has followed the current of New York authorities upon any question whatsoever in all its devious windings has learned that it goes—

> " Winding in and winding out,
> As still to leave a man in doubt
> Whether the snake that made the track
> Was going south or coming back."

The dubious compliment that Senator Carpenter paid to New York reports, that they were so convenient, for in them could be found decisions on every side of every question, admits of but few exceptions, and the question under consideration is not one of them.    The authority of the cases already cited is considerably shaken by *Bon-*

*ner v. McPhail,* 31 Barb., 106, and the. case nearest in point that we have been able to find is *The People, ex rel. The Commissioners, v. Connor,* 46 Barb., 333, and this is diametrically opposed to them.    See, also, *Kinney v. Adams,* 2 Harr. (Del.), 357.    *Toler v. Hayden,* 18 Mo., 399.    *Fassett v. Fassett,* 41 Mo., 516.

*Scofield & Ireland,* for defendant in error, to the point that the court had no authority to refer the cause, cited Edwards on Referees, section 1.    *Lee v. Tillotson,* 24 Wend., 338.    *Scott v. M'Intosh,* 2 Campbell, 238. *Elmore v. Thomas,* 7 Abb. Pr., 70.    *McCullough v. Brodie,* 13 How. Pr., 346.    *De Hart v. Corvenhaven,* 2 J. C., 402.    *Kitchum v. Clark,* 22 Barb., 319.    It has been repeatedly held that when a referee has not been sworn in a cause sent to him, it will not affect his finding where parties appear before him and try the cause without objection.    *Whalen v. Board of Supervisors,* 6 How. Pr., 278.    *Keator v. Ulster,* 7 Id., 41.    Edwards on Referees, 107.

MAXWELL, J.

This action was brought by Findley against Lamaster for work, labor and services performed by him for the defendant, and for money loaned and advanced at his instance and request.    The plaintiff claims a balance due him of $2,628.19.    Lamaster in his answer to the petition claims a balance due him of the sum of $4,620.08. Findley in his reply denies all the facts stated in the answer.

At the September term, A. D. 1874, of the district court the following order was made in the cause:

"And now on this day this cause came on for hearing, and it was ordered by the court that G. W. Covell be, and he is hereby appointed referee to take the proofs, find the facts and the law, and report the same to this

court; to all of which the defendant by his attorney excepted."

The testimony was taken before the referee who found in favor of Findley, and that there was due him from Lamaster the sum of $1,799.50. Exceptions were filed to the report by the defendant which were overruled, and judgment rendered on the report. The case is brought into this court by petition in error.

The first question presented is the authority of the court to refer a case of this kind without the consent of the parties. This court in *Mills v. Miller*, 3 Neb., 94, held that a purely legal action could not be referred, except by consent of parties, as neither party can be deprived of the right of trial by jury in such cases.

While courts of equity entertain concurrent jurisdiction with courts of law in matters of account, yet if the account can be fairly taken in a court of law, equity will not interfere. *Daithy v. Clemens*, 6 Beavan, 165.

In *Fowle v. Lawrason's Exr.*, 5 Peters, 495, the supreme court of the United States held: "that a court of chancery has jurisdiction in matters of account cannot be questioned; nor can it be doubted that this jurisdiction is often beneficially exercised; but it cannot be admitted that a court of equity may take cognizance of every action for goods, wares and merchandise, sold and delivered, or of money advanced, when partial payments have been made, or of every contract express or implied, consisting of various items on which sums of money have become due, and different payments have been made. Although the line may not be drawn with absolute precision, yet it may be safely affirmed that a court of chancery cannot draw to itself every transaction between individuals, in which an account between parties is to be adjusted. In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted.

It is the appropriate tribunal. But in transactions not of this peculiar character, great complexity ought to exist in the accounts, or some difficulty at law should interpose, some discovery should be required, in order to induce a court of chancery to exercise jurisdiction."

Some of the reasons why resort was had to a court of equity are thus stated by a learned author. "If the demand be of consequence, and the matter of an intricate nature   *       *       *   it is more advisable to resort to a court of equity, where matters of account are more commodiously adjusted, and determined more advantageously for both parties; the plaintiff being entitled to a discovery of the books, papers, and the defendant's oath, and on the other hand the defendant being allowed to discount the sums paid or expended by him." Bacon's Abr. Accompt.

Judge Story says: "In cases of account, there seems a distinct ground upon which the jurisdiction for discovery should incidentally carry the jurisdiction for relief. In the first place the remedy at law in most cases of this sort is imperfect or inadequate. In the next place where this objection does not occur, the discovery sought must often be obtained through the instrumentality of a master, or of some interlocutory order of the court; in which case it would seem strange that a court should grant some and not proceed to full relief. In the next place, in cases not falling under either of these predicaments, the compelling of the production of vouchers and documents would seem to belong peculiarly to a court of equity, and be a species of relief." Story's Equity Jurs., section 67.

Under the code, discovery has ceased to be one of the objects sought in a court of equity; jurisdiction, therefore, in cases involving the examination of mutual accounts, cannot be maintained on that ground. The parties to the suit may be examined as witnesses in the

case; and a court of law has authority, equal to that possessed by a court of equity, to compel the production of books, vouchers, or other documentary evidence. The jurisdiction of courts of equity is therefore restricted to those cases which have their origin in intimate or confidential relations of the parties, and does not extend to ordinary actions involving mutual accounts between creditor and debtor. In all such cases either party has a right to demand a jury; and a court cannot refer such a cause except by consent of the parties. This right is guaranteed by the constitution and its application should not be restricted by the courts.

It is conceded that the referee was not sworn. And it is urged that as the law requires he should take an oath, that the failure to do so renders the entire proceedings void. The referee derives his authority from the order of the court and not from the oath. The failure to take the oath required by law, therefore, is a mere irregularity that the parties waived by proceeding to trial without objection on that ground. *Keator v. Ulster Plank Road Co.*, 7 How. Pr., 41.

This is an action at law. The court, therefore, erred in appointing a referee to determine the issues. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

MR. JUSTICE GANTT, before whom the cause was argued below, did not sit.