Moses P. Kinkaid, appellee, v. Paris F. Hiatt and Sarah F. Hiatt, appellants.

1. **Search Warrant:** REPLEVIN: INJUNCTION. Where a plaintiff, by means of a search warrant and an action of replevin, obtains possession of certain drafts of which he claims to be the owner, and applies the same to his own use, he cannot refuse to prosecute the action, nor can he enjoin the defendant from proceeding therein.

2. **Reference of Causes.** A purely legal action cannot be referred except by consent of the parties, as in such case, neither party can be deprived of his right of trial by a jury.

3. Bill of Peace. A bill of peace will lie only in cases where one claims or defends against many, or many claim or defend against one, except in certain cases, where the right has been satisfactorily established at law.

APPEAL to the district court for Holt county. Tried below before TIFFANY, J.

*Brome, White & Mapes* and *Sullivan & Reeder,* for appellants, cited: *Thayer v. Swift,* Har. Ch., 430. *Ex parte Ward,* 1 Atk., 153. *Sanger v. Wood,* 3 John. Ch., 416. *Carroll v. Rice,* Wal. Ch., 374. *Webb v. Williams,* Wal. Ch., 452. *Lamaster v. Scofield,* 5 Neb., 148. *Williams v. Sadler,* 4 Jones Eq., 378. *Howe Machine Co. v. Miner,* 28 Kan., 441. *Jones v. Newhall,* 115 Mass., 247. *Oehlrich v. Spain,* 15 Wall., 211, 228. *Grand Chute v. Winegar,* Ib., 373. *Ins. Co. v. Bailey,* 13 Ib., 616. *Parker v. Winnipiseogee Lake Cotton and Woolen Co.,* 2 Black., 545. *Baker v. Biddle,* Baldw., 394, *Woodman v. Freeman,* 25 Maine, 531. *Piscataqua Ins. Co. v. Hill,* 60 Maine, 178.

*Moses P. Kinkaid, pro se,* cited: 2 Story's Eq., Jur., 11th edition, Sec. 874, and cases cited. *Smith v McIver,* 9 Wheaton 532. 2 Story's Eq. Jur., Sec. 1211. 2 Pomeroy's Eq. Jur., 1044. Ib., Sec. 1049. 2 Washburne on Real Property, 483. Ib., 484. Leading cases on Eq. (4th Am. Ed.), vol. 1, part 1, page 314. Ib., page 361. High on Injunction, Sec. 12. *Pollock v. Gilbert,* 60 Am. Decis., 734.

MAXWELL, J.

This is an action in equity to enjoin the defendants from prosecuting certain actions and for an accounting. A decree was rendered in the court below in favor of the plaintiff, from which the defendant appeals.

The plaintiff alleges in his petition that, the defendant, Paris R. Hiatt, during the spring-time of 1883, did falsely

represent to the plaintiff that he possessed superior and excellent facilities for fattening cattle, and thereby induced the plaintiff, who wholly relied upon said representations, to enter into an agreement with the defendant, whereby the plaintiff agreed to furnish the defendant about seventy-four head of steers to fatten, said steers to be gathered together during the summer and fall of 1883, and be taken in charge by the defendant, Paris R. Hiatt, and grazed and fed and fattened by said defendant, and said defendant to have the same well fattened on or, before the first day of June, 1884, when the same were to be sold by plaintiff, and out of the proceeds of the purchase price thereof plaintiff was first to take the original purchase price thereof and in addition thereto thirty-five per cent profit, and then pay to said defendant, Paris R. Hiatt, all of the proceeds of the sale of said cattle over and above the original purchase price and plaintiff's profit as above set forth, for and in consideration of the buying of said cattle for plaintiff's agent, and grazing, feeding, and fattening the same.

Said contract having been made and entered into on or about the 28th day of May, 1883, the same being in writing.

2. That, in pursuance of said agreement, plaintiff bought by his agent, Paris R. Hiatt, defendant, seventy-six head of cattle, and turned the same over to Paris R. Hiatt, defendant, to be grazed, fed, and fattened in pursuance of said agreement, but delivered to said Hiatt seventy-six head to be kept in pursuance of said agreement instead of seventy-four head, which cattle said Hiatt accepted in pursuance of said contract, the purchase price of the same, according to the report of said Paris R. Hiatt to plaintiff, being about $2,500.

3. At the time of delivering or turning over to said Paris R. Hiatt the said seventy-six head of cattle as above set forth, said defendant made his report to the plaintiff of the amount of money he had expended for plaintiff in the purchase of said cattle, as agent for plaintiff, and plaintiff

then and there accepted the report of said defendant as correct, but since the making of said settlement, plaintiff has discovered that the report of said Hiatt was false in one particular, and now has reason to believe and does believe that it was false in other particulars, and that said Hiatt drew checks in favor of persons of whom he bought cattle for plaintiff, which checks were paid out of plaintiff's account, plaintiff believing that said checks were for the purchase price of cattle, but has since learned that one of the said checks was not wholly in payment of cattle, but in payment for other property which was not bought for the use or benefit of plaintiff, but was bought for the use and benefit of the defendant, and in his report to plaintiff said Hiatt represented that said check represented wholly the purchase price of cattle.

4. That at the time said Paris R. Hiatt induced the plaintiff to enter into said agreement concerning said cattle, he, said defendant, deceived the plaintiff as to his facilities for keeping and fattening said cattle, and was in fact unable as a farmer to produce the necessary feed for the same, and unable to procure enough for the same by purchase, on account of financial inability, and after defendant had taken care of said cattle for a few months very poorly and in an improper manner, it became known to plaintiff that defendant was unable to furnish necessary grain to fatten said cattle, and in order to assist defendant in procuring grain to fatten said cattle, plaintiff made the defendant a loan of the sum of $50, as represented by a promissory note in words and figures following:

"$50.00　　　　　　O'NEILL, NEB., Nov. 26, 1883.

"One day after date, for value received, I promise to pay to the order of M. P. Kinkaid fifty dollars, payable at Holt County Bank, O'Neill, Nebraska, with interest at the rate of ten per cent per annum.

"PARIS R. HIATT & WIFE.
"P. O., Clearwater, Neb."

And afterwards, to-wit, on the 22d day of January, 1884, in order to further assist said defendant in procuring corn on which to fatten said cattle, the plaintiff loaned said defendant the sum of $100, as represented by one certain promissory note in the words and figures following, to-wit:

"$100.00                    O'NEILL, NEB., Jan. 22, 1884.

"One day after date I promise to pay to the order of M. P. Kinkaid one hundred dollars, payable at Holt County, O'Neill, Nebraska, with interest at the rate of ten per cent per annum.

                              "P. R. HIATT & WIFE.
"P. O. Clearwater.

And afterwards, in the spring of 1884, the said defendant becoming wholly unable to procure grain to fatten the said cattle, the defendant and plaintiff did then and there enter into one additional agreement concerning the fattening of said cattle, to-wit: Plaintiff was to furnish money to buy sufficient corn to feed said cattle until on or about the 1st day of June, 1884, when the same were to be sold by plaintiff, and when said cattle were so sold plaintiff was to take from the proceeds of the sale of same the cost price of said corn so bought by him, and the amount of the two promissory notes above referred to, which two promissory notes or the amounts they represented were to be considered the same as so much money having been directly invested in corn upon which to fatten said cattle, and then to carry out the agreement as originally made and above referred to, viz., to take from the balance of the proceeds the original purchase price of the said cattle and a profit of thirty-five per cent to plaintiff upon said original purchase price, and pay said defendant, Paris R. Hiatt, the balance of the proceeds of the sale of said cattle, and in pursuance of said additional agreement plaintiff by defendant bought an amount of corn, which defendant represented to plaintiff cost $580, and plaintiff paid that

amount for it by paying the checks defendant Paris R. Hiatt drew.

5. During all the time aforesaid said cattle in pursuance of said agreements were kept in the possession of the defendant, Paris R. Hiatt fed and cared for the same in such a negligent and careless manner that it became apparent to him that he would realize but little or nothing in pursuance of the said agreements for feeding and taking care of the same, and intending to wrong, defraud, and cheat the plaintiff and gain an unjust advantage of him, and be able to dictate to plaintiff the terms of a settlement, and to extort from the plaintiff an unfair settlement, did, on or about the 26th day of May, 1884, without the knowledge, authority, or consent of the plaintiff, and against the expressed wishes of plaintiff to defendant, and contrary to the express terms of the agreement, dispose of the same in the city of Chicago (except as below stated), and received in payment of the same three drafts or cashier's checks, which drafts or cashier's checks are described in exhibit A and B, hereto attached, and made a part hereof, and besides said checks about $41 in money, receiving in all the sum of $3,627.19 for said cattle.

6. During the latter part of May, 1884, the defendant, Paris R. Hiatt, was wholly insolvent, or if not insolvent had the title to his property held in the name of his wife, and claimed that same belonged to her, so that it would be impracticable to have enforced the collection of a judgment against him for a sum much smaller than the amount of the proceeds of the sale of said cattle, and the plaintiff then knew that the defendant, Paris R. Hiatt, bore the reputation of being irresponsible and unreliable in the payment of his debts, and the plaintiff, being in the possession of the information so stated, in order to save himself from entire loss of the value of said cattle, did then and there, in or about the latter part of May, 1884, ratify the sale of said cattle by said Hiatt, and in the village of O'Neill,

Holt county, Nebraska, personally demand of said Hiatt the proceeds of the sale of said cattle so far as same was represented by the checks and drafts described in exhibit A and B, heretofore referred to, and thereby then and there became the exclusive owner of said checks or drafts, but the said defendant then and there denied the contract existing between him and the plaintiff, concerning the fattening of said cattle, and claimed from plaintiff only pay for keeping the same, and claimed that he was to have pay for the attention he had bestowed upon the same.

7.   And at that time plaintiff's interest in the proceeds of the sale of said cattle was the purchase price thereof, viz., twenty-four or twenty-five hundred dollars, and the amount he had invested in corn to feed the same, about $780, and the thirty-five per cent profit upon the original purchase price of said cattle, and was entitled to an amount of the proceeds of the sale of said cattle aggregating in all from $3,900 to $4,000; and the interest of the defendant, Paris R. Hiatt, in the proceeds of the sale of said cattle was the amount of the proceeds of the sale of said cattle, less the interest of the plaintiff as aforesaid, and the interest of the plaintiff was paramount to the interest of the defendant, Paris R. Hiatt, and was to be had by him in exclusion, if necessary, to any interest of Paris R. Hiatt in the proceeds of the sale of said cattle.   And the said Paris R. Hiatt had sold seventy head of said seventy-six head, and had, previous to the sale of the same, converted the other six head of said lot of cattle to his own use, and had not accounted to the plaintiff for the same.   And then and there, upon the demand by plaintiff of the defendant to surrender to him the proceeds of the sale of said cattle, the defendant refused to deliver the same, and converted the same to his own use and undertook to flee from Holt county, and defendant was running hastily away to get out of Holt county with the intention of negotiating a sale of

said drafts or checks, and for the purpose of preventing the plaintiff from ever deriving any benefit therefrom, and was so malicious towards the plaintiff that he threatened to destroy said checks for the purpose of depriving plaintiff of any benefit therein, or what they represented, rather than to have permitted plaintiff to have gained possession of the same or derive any benefit therefrom, and the defendant had then and there feloniously converted the said drafts or checks to his own use, and was so fleeing with said drafts or checks upon his person when plaintiff procured his arrest for the purpose of preventing consummation of the felonious intent of the said defendant, and demanded said checks or drafts of the defendant, and defendant denied having the same, when plaintiff procured the person of the defendant to be searched in pursuance of a search warrant sworn out and issued against the defendant, said proceeding being described in exhibit B, hereto attached, and the sheriff of Holt county, in the execution of said search warrant, procured from the person of the defendant said checks or drafts, and having in his possession at the time of procuring the same an order of replevin for the recovery of the same in one certain action begun by plaintiff against said defendant for the same, did then and there, mistakenly and innocently, and without any blamable fault of plaintiff, make his return into court that he had received said property in pursuance of said order of replevin, and plaintiff became in possession of said checks or drafts as aforesaid and has realized upon the two made payable to the order of P. R. Hiatt and Kinkaid, the nominal value of the same, viz., $2,836.07, but has not realized anything upon the one for $750.12, made payable to the order of P. R. Hiatt, and still has the same, but at the time of instituting said replevin suit plaintiff did not know that said check was made payable to the order of P. R. Hiatt solely, but had had information that it was made payable to P. R. Hiatt and Kinkaid, and said defendant has made his

appearance in said replevin suit and the same is now pending and undetermined in the district court of Holt county, and the pleadings have been filed and issues formed therein, as shown by exhibit A, hereto attached and made a part hereof, and plaintiff cannot negotiate said check for $750.12. Before disposing of said cattle said defendant had killed one of the same and converted it, or the proceeds thereof, to his own use, and has never accounted to the plaintiff for the same, and had also suffered the taking of one of the said cattle from him and has never accounted to the plaintiff for the value of the same, and as to the value of said two head of cattle the plaintiff has no other information than the report of the defendant to him, which report of the defendant would make said cattle worth about $150, and since the wrongful sale of the cattle by defendant, plaintiff has discovered the other four head of said seventy-six head of cattle where defendant had them concealed, and has fattened and sold and is ready to account for the proceeds of the sale thereof, and his attention bestowed upon the same, and plaintiff has realized over and above the costs of recovery and fattening same about $100, and cannot be more definite as to the amount at this time.

Subsequent to the occurrence above stated, said defendant began one certain action against the plaintiff, in Antelope county. One trial has been had in said action, which resulted in a disagreement of the jury, and the trial of said cause has been continued to the next regular term of the district court of said Antelope county. Subsequent to the beginning of said action, and of the occurrences above stated, said defendant, Sarah F. Hiatt, filed her petition in the district court of Holt county, in said replevin suit above described, as an intervenor in said action. The said Paris R. Hiatt is a man of dishonest, desperate, and litigious disposition, and threatens to begin or have begun two actions against the plaintiff for the four steers referred

to as recovered by plaintiff, and has induced another person to lay claim to said cattle falsely, and has been trying to induce another person to falsely claim and prosecute an action for the recovery of said four head of cattle, and threatens that other persons than himself will claim an interest in said checks or drafts so recovered by plaintiff, and threatens that divers other actions will be brought by him or other persons, or by him and other persons, concerning said cattle transaction. And plaintiff believes said defendant will carry said threats into execution, and will harass plaintiff with unnecessary and circuitous litigations and a multiplicity of suits, and the prosecution of the suits instituted by defendants against plaintiff are malicious, and the other suits contemplated by defendant, Paris R. Hiatt, against plaintiff, are malicious and intended to be vexatious by said defendants.

7½. Since the beginning of said actions, and within the last two days, plaintiff has learned that of about fifteen hundred bushels of corn furnished by plaintiff and entrusted to the defendant, Paris R. Hiatt, by the plaintiff, to feed and fatten said cattle, and intended solely for that purpose, the said Paris R. Hiatt has used some of the same for his own exclusive use and benefit, and has used at least one hundred and fifty bushels of the same for his own exclusive use and benefit, and the plaintiff has derived this information from an employee of said Hiatt who helped said Hiatt take care of said cattle, and acted as servant to said Hiatt in making an improper disposition of said corn, and said Hiatt also fed some of said corn to his own stock instead of to the cattle of plaintiff, as plaintiff is also informed.

8. The financial and property condition of the said defendant is such that, in the event of the final termination of said actions now pending or which may be brought concerning said cattle transaction, terminating in a judgment or judgments in favor of the plaintiff (and plaintiff believes

that such will be the result), plaintiff would have to pay all his costs, and the same could not be recovered from the defendant upon execution.

The defendants, Paris R. Hiatt and Sarah F. Hiatt, are husband and wife, and have conspired together to make false claims against the plaintiff concerning the title to said cattle herein referred to, and if they shall not succeed in that, then to recover payment for feeding the same, as set forth in the petition of the said Sarah F. Hiatt.

Neither of the said defendants has any legal claim or valid claim against the plaintiff.

Neither nor both of said actions now pending are adequate to adjudicate the rights of the plaintiff or either or both of the said defendants, and the adjudication of either before the final termination of this cause would be detrimental to the plaintiff, and would cause the plaintiff great and irreparable injury, and plaintiff is without remedy except by the intervention of the equitable powers of this court.

$9\frac{1}{2}$.   In a trial of said cause in Holt county, and in a trial of said cause in Antelope county, plaintiff, to maintain the allegations he has made in his pleadings, must gather together from five different counties a great number of witnesses at great expense, and will need them all in the trial of each of said causes, and would need most of said witnesses in the trial of any causes instituted by either of defendants against plaintiff concerning said cattle transaction.   And the financial and property condition of said defendant, Paris R. Hiatt, is such that the costs in either or both of said causes, if adjudged to be paid by him, could not be collected from him, and the plaintiff would be compelled to pay the same himself (his own costs); and defendant, Paris R. Hiatt, has not paid to plaintiff said sum of $41 received by said Hiatt in cash for said cattle, and has in no manner accounted to plaintiff for the same, and has not paid plaintiff for the one steer he suffered

to be taken from his (Hiatt's) possession, and the one steer said Hiatt butchered, which steers were of the value of $150 according to the statements of said Hiatt to plaintiff, and plaintiff claims the value of said steers to be $150, and defendant, Paris R. Hiatt, is still indebted to plaintiff for said sum of money, and the value of 150 bushels of corn of the value of $45, and for the amount he defrauded plaintiff in buying said cattle, with interest thereon at 7 per cent from June 1, 1884.

Wherefore plaintiff prays that he may have an accounting with said defendant, Paris R. Hiatt, concerning the buying of said cattle as agent of the plaintiff; that Paris R. Hiatt may be made to render a true account of his acts as agent for the plaintiff in buying said cattle, and a true account of the corn furnished by plaintiff to feed said cattle, and that he may account fully concerning the furnishing and keeping of said cattle and the sale of the same, and that plaintiff may have judgment against said Paris R. Hiatt for the sum of $236 and interest at 7 per cent from June 1, 1884; and that Sarah F. Hiatt be required to show what interest she has in said drafts or checks, as set up in her petition, and that plaintiff be decreed the owner of said check for $750.12, and that said Paris R. Hiatt endorse the same over to the order of the plaintiff, and that the differences between the plaintiff and the defendant herein referred to be adjudicated fully, and that until the final hearing or trial of this action defendants be enjoined from proceeding any further in said action now pending in the district court of Holt county, and that the defendant, Paris R. Hiatt, be enjoined from proceeding any further in said action now pending in the district court of Antelope county. Or, if the court will not enjoin said Paris R. Hiatt wholly from prosecuting the action pending in Antelope county, enjoin him so far as to recover for the value of the checks or drafts in controversy is concerned. And that both of said defendants be en-

joined from instituting or prosecuting any further suits concerning said cattle transaction until the final termination of this action, and that in the final termination hereof said actions be perpetually enjoined, and for such other relief as shall be just in the premises.

Inasmuch as the jurisdiction of the court is denied, and as the decision will probably turn upon that question, therefore the whole petition is given, although somewhat more favorable to the plaintiff in several respects than the testimony. The testimony, including the exhibits, covers more than 500 closely written pages. The defendant demurred to the petition upon the grounds of want of jurisdiction, and because it failed to state a cause of action. The demurrer was overruled, to which the defendants excepted. The defendants thereupon filed separate answers, that of Paris R. Hiatt, containing the following allegations:

After setting out what purports to be the original contract between the plaintiff and defendant, adds: That on or about August 3, 1883, plaintiff wrote to said defendant not to purchase any more cattle under said contract, and on the 18th day of August, 1883, the said defendant, at O'Neill City, Nebraska, purchased and bought out all the right, title, and interest of plaintiff in and to said cattle and said contract, and entered into the following parol agreement with plaintiff, and wholly annulled and abrogated the said written contract aforesaid with plaintiff, and substituted in its stead the parol contract hereafter set out as follows, to-wit:

"The said plaintiff then and there agreed with defendant to annul and abrogate said written contract as aforesaid, and to sell to defendant all his, plaintiff's, interest in the cattle so purchased under said written contract, together with his interest in said contract; that defendant should stand charged with and indebted to plaintiff in the amount paid for said cattle as borrowed money, received from plaintiff, then and there further agreed to loan defendant

·enough money over and above the amount paid out for said 21 head of cattle to make $2,400, at the agreed rate of 35 per cent interest on the whole amount of $2,400 for nine months, for the purpose of defendant buying cattle and hogs upon his own account, and to buy hay and corn for the cattle purchased, after feeding up the crop of about 90 acres of corn belonging to Sarah F. Hiatt, and about thirty tons of hay belonging to her, and what other pro-·duce she had on her farm suitable for feeding said stock. And in pursuance of said parol contract said defendant then and there, August 18, 1883, executed to plaintiff his promissory note for the said sum of $2,400, together with the interest agreed upon by plaintiff and defendant at 35 per cent, making a total of $3,030, and delivered same to plaintiff, and defendant says that for said note twenty-four hundred dollars was all the money he ever received for the same, and that the amount for which said note was given was ascertained to be $3,030, by adding to said $2,-400, 35 per cent interest for nine months, agreed upon between plaintiff and defendant for the use of said $2,400, defendant says that he gave checks on said plaintiff in excess of said $2,400, to the amount of $45, for which plaintiff took defendant's note, due one day after date, drawing ten per cent interest per annum, and subsequently, in November, plaintiff advanced to defendant, in pursuance of said parol contract, $50, for which defendant gave said plaintiff his note for said amount, drawing interest at 10 per cent per annum, and on the 22d day of January, 1884, said plaintiff advanced to defendant, in pursuance and execution of said parol contract, the sum of $100, for which defendant gave said plaintiff his promissory note, due one day after date, drawing 10 per cent interest per annum. That subsequently defendant, between the last part of March and first part of April, drew checks on Holt County Bank amounting in the aggregate to the sum ·of $580, which checks were cashed by plaintiff in the

execution of said parol contract. That all of said sums of money so advanced and paid defendant on the parol contract aforesaid, except $646, the price of the twenty-one head of cattle aforesaid, which was received of plaintiff under said written contract and charged to defendant, and included in note of $3,030, of defendant to plaintiff, as hereinbefore stated, when said written contract was wholly annulled as aforesaid.

"That it was further verbally agreed between plaintiff and defendant that when said cattle and hogs were by defendant sold, plaintiff should be paid the money advanced by him to defendant; that said cattle were sold on the 26th day of May, 1884, by defendant, and brought the sum of $3,627.19, and defendant received in payment $41 in money, one draft for $1,836, given by the Union Stock Yards National Bank of Chicago upon the First National Bank of Chicago, No. 362,635, payable to order of P. R. Hiatt and Kinkaid, and one draft by the Union Stock Yards National Bank of Chicago upon the First National Bank of Chicago, No. 362,654, for $1,000, payable to order of P. R. Hiatt and Kinkaid, and one draft drawn by the Union Stock Yards National Bank of Chicago upon the First National Bank of Chicago, No. 362,653, for $750, payable to the order of P. R. Hiatt. That defendant returned from Chicago with said drafts to O'Neill City, Nebraska, for the purpose of settling with and paying plaintiff what was due him, and immediately went to plaintiff and asked him for a settlement and for the notes made to him as herein stated, when plaintiff informed defendant and demanded that defendant turn over to him all of said drafts and then make settlement, which defendant refused to do, until his account was rendered and notes given up. That thereupon plaintiff filed a complaint against defendant, before John P. O'Donnell, J. P., charging him with feloniously stealing and taking away from O'Neill City, Neb., the

drafts aforesaid, and caused the said defendant to be arrested and searched by the sheriff of Holt county, Nebraska, and said drafts taken from him by force and against the will of defendant. That after said drafts were so taken from defendant, and while defendant was in the custody of the sheriff of said Holt county, and while said sheriff held said draft as sheriff aforesaid, plaintiff commenced his action of replevin before John P. O'Donnell against defendant to recover said drafts, and had return made on writ of replevin by the said sheriff of Holt county, that he had taken said drafts under said writ and turned same over to plaintiff thereunder, which action of replevin was certified by said justice to the district court of Holt county, Nebraska, which is the identical law action now pending in said district court of Holt county, Nebraska, in which defendant herein is enjoined from defending against; defendant says that by reason of the premises plaintiff unlawfully and fraudulently, with intent to injure and obtain an undue and unlawful advantage over defendant, and to obtain possession of said drafts, fraudulently employed the means aforesaid and the power of the criminal laws of the state of Nebraska, with the intent to swindle defendant out of said drafts and the amount of defendant's notes held by him. That defendant is credibly informed and believes and states the fact to be, that after plaintiff recovered possession of said drafts as aforesaid, and in furtherance of his pre-arranged design to defraud defendant, plaintiff indorsed said drafts and has procured the money thereon to the full amount of all drafts, including the $750 draft."

There are other allegations in the answer to which it is unnecessary to refer. The wife also files an answer, and the plaintiff a reply to each. The case was then referred to N. A. Rainbolt, who heard the testimony and made an elaborate report, finding the issues in favor of the plaintiff. Exceptions were filed to the report, which were over-

37

ruled, and a decree rendered, finding the right of property in the drafts in question in the plaintiff, and striking a balance in the account between the plaintiff and defendant, and enjoining the defendants from prosecuting any action in regard to the principal transaction between the parties, except that for malicious prosecution.

At every step in the proceedings the defendants have denied the jurisdiction of a court of equity in the premises, and now insist that the plaintiff having instituted an action of replevin, and thereby obtained the drafts in question, has thereby chosen his forum, and cannot retain the drafts and invoke the aid of a court of equity to restrain the determination in a court of law of the right of property and of possession of the aforesaid drafts. This position, we think, is well taken. The statute regulating the action of replevin declares that the officers shall not deliver to the plaintiff, his agent or attorney, the property so taken until there has been executed by two or more sufficient sureties of the plaintiff a written undertaking to the defendant, in at least double the value of the property taken, to the effect that the plaintiff shall duly prosecute the action and pay all costs and damages, which may be awarded against him. Code, Sec. 186. An appraisement of the property is required for the purpose of fixing the amount of the undertaking. Id., Sec. 187. Now upon what principle of equity can a party, after executing such a bond and receiving the property, not only refuse to prosecute the action himself, but enjoin the defendants from doing so? The plaintiff has not cited a single case showing his right to such an injunction, and it is not claimed that such cases can be found. The plaintiff, therefore, having resorted to a court of law to obtain relief, and invoked the powers of that court, must exhaust the remedies of the court before he can resort to equity for relief. Besides, if the court should find that the action was purely legal in its nature, it could not be referred without the

consent of the parties. This question was before this court in *Mills v. Miller*, 3 Neb., 94, and *Lamaster v. Scofield*, 5 Neb., 148. In such cases either party has a right to demand a jury. This right is guaranteed by the constitution, and should not be restricted unless the case is one clearly of equity jurisdiction.

The petition and proof wholly fail to show a case which would entitle the plaintiff to maintain a bill of peace. This remedy is applicable where one claims or defends a right against many or many defend or claim a right against one. *Conyers v. Abergavenny*, 1 Atk., 285. The right claimed must affect many persons. If the question is between two persons only, the action will not lie. *Eldridge v. Hill*, 2 Johns. Ch., 281. *Woodward v. Seeley*, 11 Ill., 157. 50 Am. Dec., 445. *Moses v. Mobile*, 52 Ala., 198. *Nevitt v. Gillespie*, 1 Howard (Miss.), 108, When the right of a plaintiff is satisfactorily established at law, he is entitled in certain cases to relief, but that rule cannot aid the plaintiff in this case. It is clear that a court of equity had no jurisdiction in the premises. The judgment of the district court is reversed and the action dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.