Kuhl v. Pierce County.

## F. KUHL ET AL. V. PIERCE COUNTY.

FILED APRIL 4, 1895.    No. 6062.

1. **Error Proceedings:** PARTIES. All parties to a joint judgment
are necessary parties to a petition in error filed here by one of
their number to reverse it; but this rule does not require that
all the parties to a suit in which a judgment has been rendered
should be made parties to the error proceedings instituted here
for a review of such judgment. Only the parties who are liable
on, or bound by, the judgment are necessary parties to the pro-
ceeding in error here.

2. **Reference:** RIGHT TO JURY TRIAL. A legal action cannot be
referred except by consent of parties, as a litigant cannot be de-
prived of his constitutional right to a jury for the trial of issues
of fact made by the pleadings in a legal action. *Mills v. Miller*,
3 Neb., 87, followed.

3. **Equity:** ACCOUNTING: ACTION AGAINST COUNTY TREASURER:
EMBEZZLEMENT: JURY TRIAL: PLEADING: RIGHTS OF SURE-
TIES. To recover public moneys collected and embezzled by him,
Pierce county brought an action against its defaulting county
treasurer and all the sureties on his two official bonds, the treas-
urer having been elected for two terms, the sureties on said bonds
being different persons. The petition alleged that the ex-treas-
urer was insolvent, and that the county was unable to prosecute
an action at law on either of said bonds because the books and
records kept by the treasurer did not disclose when the defalca-
tion complained of occurred, and there was no evidence known
to the county by which it could prove, in an action at law,
whether such defalcation occurred during the treasurer's first or
second term of office. The prayer of the petition was for an
accounting in equity. *Held*, (1) That the averments of the peti-
tion made out a cause of action in favor of the county upon con-
tracts for the payment of money only unincumbered by any
collateral agreements, contracts, or securities whatever; (2) that
the action was one legal in its nature; (3) that the facts averred
in the petition were not sufficient to entitle the county to equita-
ble relief; (4) that the county would not be permitted to make
use of a state of facts brought about by the neglect of the legal
duties of its county board to deprive the sureties on their treas-
urer's official bond of their constitutional right to a jury trial;
(5) that the sureties on the treasurer's bond were entitled to a
jury for the trial of the issues of fact made by the pleadings.

ERROR from the district court of Pierce county. Tried below before KINKAID, J.

See opinion for statement of the case.

*C. Hollenbeck*, for plaintiffs in error:

There is no privity of interest between the sureties on the first and second bonds. The liability incurred by a surety on an official bond is for the term for which the officer was elected, and the courts have universally held that the liability of a surety on such bond is to be strictly construed according to the terms of the bond. (Murfree, Official Bonds, sec. 731.)

There is no trust, express or implied, in the office of county treasurer. His liability for the funds in his hands, or received by him in his official capacity, is absolute and unconditional. It is his duty to collect money and pay it over in the manner provided by law. This duty is strictly legal. He cannot evade it or excuse himself in any way for a non-compliance with it. If the money is stolen or destroyed through no act of his, he cannot be heard in defense to show acts of care or diligence for the purpose of escaping liability. He is an insurer of money in his hands. (Murfree, Official Bonds, sec. 694; *State v. Harper*, 6 O. St., 607; *Commonwealth v. Comly*, 3 Pa. St., 372; *United States v. Prescott*, 44 U. S., 578; *Muzzy v. Shattuck*, 1 Denio [N. Y.], 233.)

If the remedy in this action is purely legal then this action ought not to have been referred, and the court had, in that case, no authority to appoint a referee over the objection of the plaintiffs in error. (*Mills v. Miller*, 3 Neb., 87; *Kinkaid v. Hiatt*, 24 Neb., 562.)

The causes of action were improperly joined. (*Cassady v. Board of Trustees*, 93 Ill., 394; *Screwmen's Benevolent Association v. Smith*, 7 S. W. Rep. [Tex.], 793; *Oglesby's Sureties v. State*, 11 S. W. Rep. [Tex.], 873.)

Discovery has ceased to be one of the objects sought by courts of equity. (*Lamaster v. Scofield*, 5 Neb., 148.)

Where an officer holds two successive terms of office and is a defaulter, the presumption of law is that such defalcation occurred during his last term of office. (*Kelley v. State*, 25 O. St., 567; *Morley v. Town of Metamora*, 78 Ill., 394.)

*Powers & Hays*, also for plaintiffs in error.

*W. W. Quivey* and *Allen, Robinson & Reed, contra*, cited: *State v. Churchill*, 3 S. W. Rep. [Ark.], 352; *Bruce v. United States*, 17 How. [U. S.], 437.

RAGAN, C.

At the general election held in November, 1887, one Carl Korth, was duly elected treasurer of Pierce county. He qualified by giving bond and entering upon the discharge of his duties. The plaintiffs in error (hereinafter called the "sureties") signed Korth's official bond as treasurer for the term for which he was elected and which expired on the first of January, 1890. At the November election, 1889, Korth was again elected treasurer of Pierce county for two years and again qualified and entered upon the discharge of his duties for the second term commencing January 1, 1890. A large number of parties became sureties on his official bond for his second term of office. None of the plaintiffs in error, the sureties, were signers of the second bond. On the 18th of December, 1890, Korth resigned and was found to be a defaulter, and this action was brought by Pierce county to the district court against Korth and all the sureties on both his bonds. The petition contained the necessary averments of the election of Korth as treasurer of the county for two terms as aforesaid; his acceptance of the office for each of said terms and his giving bonds to faithfully discharge the duties of his office, account for and pay over all moneys which should come

into his hands as such treasurer during each of said terms of office. The petition then alleged that Korth did at various times during the time he held said office misappropriate large amounts of money and convert the same to his own use, and that he was on the 18th of December, 1890, a defaulter in the sum of $35,517.41, which sum he had neglected and refused to account for and pay over to the proper authorities; that Korth had resigned the office of treasurer and that he was wholly insolvent. The petition then alleged that the county "is unable to prosecute an action at law on either of said obligations for the reason that the books, papers, and records of said * * * treasurer * * * as compiled and made by said defendant Korth during the term that he exercised the duties and functions of said office, * * * and as said books now appear do not disclose and show. wherein the said defalcation occurred, nor is there any record or evidence known to plaintiff whereby plaintiff can in any action at law show whether said defalcation occurred during the period of time covered by said first obligation or during the period of time covered by said second obligation." The prayer of the petition was that an accounting in equity might be had, to the end that it might be adjudged and decreed when the several misappropriations and conversions of money occurred, the amounts thereof, and for what amounts of the defalcation the sureties on the first and second bonds were respectively liable. The sureties demurred to this petition on the ground that the petition did not state facts sufficient to entitle the county to equitable relief. The signers or sureties on the second bond submitted a similar demurrer. These demurrers were by the court overruled and the "sureties" and the signers of the second bond answered. The answers among other defenses alleged that the petition did not state facts sufficient to entitle the plaintiff to equitable relief. No reply appears to have been filed by the county. After the issues were thus made up the sure-

ties, and the·signers of the second bond as well, demanded
a jury trial, which was denied by the court, and on motion
of the county the case was referred to a referee "to take
the evidence and report the facts and evidence to this court."
This order was made against the objection and exceptions
of the sureties and the signers of the second bond as well.
In due time the referee heard the evidence, made his find-
ings of fact and reported the same, and on the 13th of
October, 1892, the district court overruled the exceptions
filed to the report of the referee and denied the motions for
a new trial and entered three judgments as follows: (1) a
judgment against Carl Korth only for $37,777.40; (2) a
judgment·against the sureties only for $14,544.18; (3) a
judgment against the signers of the second bond only for
the sum of $23,233.22. Carl Korth has neither appealed
from the judgment rendered against him nor filed in this
court any petition in error to reverse the same. Such
judgment, therefore, is not before us for review. Whatever
conclusion may be reached in the matter under consideration
here must be taken and understood as neither reversing,
vacating, modifying, nor in any manner affecting the said
judgment rendered in favor of Pierce county against Carl
Korth. The signers of Korth's second bond have filed in
this court a petition in error praying for a reversal of the
judgment rendered by the district court against them; but
as the judgment was rendered on the 13th of October,
1892, and their exceptions to the referee's report and their
motion for a new trial overruled at the same time; and as
they did not file in this court their petition in error until
the 14th of January, 1895, we are precluded from review-
ing the judgment rendered against the signers of the sec-
ond bond. Hence, the conclusion reached in the matter
before us must be taken and understood as not reversing,
vacating, modifying, or in any manner whatever as affect-
ing the judgment rendered by the district court of Pierce
county in this action against the signers of the second bond.

To reverse the judgment of the district court against the signers of Korth's first bond, the sureties, in due time, filed in this court a petition in error, and this judgment is the only one before us for review.

The county has submitted a motion in this court to dismiss the petition in error of the sureties. The only ground of which motion that we deem it necessary to notice is that all the parties to the judgment against the sureties in the district court are not parties to the petition in error filed here for its reversal. The only defendant in error is the county of Pierce. The plaintiffs in error are the signers only of the first bond. The contention is that Carl Korth and all the signers of the second bond should be made parties plaintiffs in error or parties defendant to the proceeding instituted in this court by the sureties to reverse the judgment of the district court against them. If the judgment which the sureties seek to reverse here was a joint and several judgment, not only against them, but against Carl Korth and the signers of his second bond as well, then the motion of the county would be well taken. The rule of this court is: "All the parties to a joint judgment are necessary parties to a petition in error filed here by one of their number to reverse it." ( *Wolf v. Murphy,* 21 Neb., 472; *Curten v. Atkinson,* 29 Neb., 612; *Consaul v. Sheldon,* 35 Neb., 247.) In *Andres v. Kridler,* 42 Neb., 784, the rule was again under consideration, and the court held: " Where only a part of several defendants, against all of whom a joint judgment has been rendered, file a petition in error for the purpose of procuring the vacation of such judgment, and the judgment defendants, who have not joined in the petition in error, are not made defendants in error, there exists such defect of parties that the judgment complained of cannot be reviewed.", The question was again before the court in *Polk v. Covell,* 43 Neb., 884, and it was held: "In order to secure a review of a joint judgment by petition in error all persons inter-

ested must be made parties to the proceedings as plaintiffs or defendants." These cases then amount to this, that where it is sought by error proceedings in this court to review the judgment of a district court all the parties made jointly liable by such judgment must be before this court; but the motion here does not fall within this rule. Korth was not a party to the judgment which we are asked to review, nor were any of the sureties or signers of Korth's second bond parties to this judgment. The only parties made liable by the judgment we are reviewing are the parties who signed Korth's first bond, namely, plaintiffs in error, the sureties. The motion must, therefore, be overruled.

This brings us to a consideration of the real merits of this case, namely, the correctness of the ruling of the district court in refusing the plaintiffs in error a jury for the trial of the issues of fact made by the pleadings. These issues were whether the treasurer was a defaulter at the expiration of his first term of office, and if so, the amount of such defalcation. Section 6 of the bill of rights provides that the right of trial by jury shall remain inviolate. This is a constitutional guaranty that the right of trial by jury shall remain as it did prior to the adoption of the constitution of 1875. Without going into a history of this provision it is sufficient to say that at the time of the adoption of the present constitution the right of trial by jury was guarantied by the constitution of the state to its citizens substantially as the right existed at common law. By section 280 of the Code of Civil Procedure it is provided that issues of fact arising in actions for the recovery of money shall be tried by a jury. The spirit of the constitution and laws of this state seems to be this, that if an issue of fact arise in an action equitable in its nature such issue of fact is triable to the court; but if the issue of fact arise in a purely legal action then the issue of fact is triable to a jury. The action at bar seems

to us to be one purely legal in its nature. It is an action upon a contract for the payment of money only unincumbered by any collateral agreements, contracts, or securities whatever. The test of equity jurisdiction is the absence of an adequate remedy at law. (*Welton v. Dickson*, 38 Neb., 767; *Watson v. Sutherland*, 72 U. S., 74.)

In the petition filed in this case by the county two reasons are assigned for the interference of a court of equity. The first is that the defaulting treasurer is insolvent; but insolvency alone will not deprive a citizen when sued upon an ordinary contract for the payment of money or upon an official bond which he has executed agreeing to account for and pay over money which he may collect for the municipal corporation of which he is an officer, of his constitutional right to have the fact as to whether he has violated his contract in not making the payment at the time, place, and in the amount promised; or whether, as such officer of such municipal corporation, he has collected funds of the public and converted them to his own use. The second reason assigned for the interference of a court of equity is that the county is unable to determine from the books and records kept by this treasurer whether his defalcation occurred during his first or second term of office, and that the county is not in possession of any evidence by which it can show when such defalcation occurred. Of this averment of the petition we have this to say: (1.) That these plaintiffs are liable, and liable only, for whatever defalcation this treasurer may have committed during the existence of his first term of office. And if it be true that the county has no evidence to show that the defalcation complained of did occur during said term, we do not see how a court of equity or a referee would be any better able to find the fact that the defalcation did then occur than would a jury. Even a court of equity or a referee must find conclusions of fact from evidence. Nor is there any averment in the petition that the county will be able to

produce evidence to show that the defalcation complained of occurred during the treasurer's first term before the chancellor, if the equity court takes jurisdiction of the case. (2.) By the statutes of this state the counties thereof are made bodies politic; that is, political corporations. The control and management of the affairs of these counties is entrusted to a board of supervisors or county commissioners. These county boards are invested with authority, and it is their duty to examine the accounts and books of the county treasurer at stated intervals. The law prescribes what books and what kind of books the treasurer shall keep, and it was the duty of the county authorities of this county to see that the treasurer kept such books and kept them in the manner provided by law, and in the event of his failure or refusal to do so, impeach him and oust him from office. Again, where a county treasurer is elected to succeed himself the county authorities are prohibited from approving his official bond for his second term until he has fully accounted for all the moneys collected by him during his first term of office. If the county authorities of Pierce county had performed their duties, there need have been no very great uncertainty as to the time when the defalcation occurred. If they had at stated times during the treasurer's first term of office examined the treasurer's books and vouchers and compelled him to produce and account for the money which such books showed was in his hands, they would have known of the defalcation very soon after it occurred; and when this treasurer's first term of office expired, before he qualified for the second term; if the county authorities had obeyed the law and performed their duties and had examined the treasurer's books and his vouchers, they could have ascertained what moneys were in his hands at that time as treasurer, as they had the authority to require him to produce this money; that is, to satisfy them that he had this money on hand, not that he had drafts, bills of exchange, and promissory notes for it, or that he had an

amount on deposit in a bank equivalent to the amount which the books showed he had in his hands as treasurer, but the lawful money of the United States in specie. The county cannot be permitted to make use of the existence of a state of facts brought about by the negligence, the laches, and the violations of duty of its county board to deprive the sureties on their treasurer's bond of their constitutional right to a jury trial. Had the county authorities of this county examined the accounts of its treasurer and settled with him at the expiration of his first term of office, as the law required them to do, and the treasurer had at that time in his possession the amount of money which the settlement and accounting disclosed he should have in his hands as such treasurer, such settlement would have afforded in any suit, either at law or in equity, a very strong presumption that the defalcation occurred subsequently to such settlement. In the absence, then, of all authority on the subject, we have not the slightest doubt but this action is a legal one, and that these sureties were entitled to a jury trial of the issues of fact therein.

A legal action cannot be referred except by consent of parties, as neither party can be deprived of the right to a trial by a jury in such cases, and in actions involving an account between the parties it is only in cases of an equitable nature that a reference can be ordered without consent of the parties. (*Mills v. Miller*, 3 Neb., 87. See, also, *Lamaster v. Scofield*, 5 Neb., 148.) In this last case it was held: "Under the Code, discovery has ceased to be one of the objects sought in a court of equity. Jurisdiction, therefore, in cases of mutual accounts between parties, cannot be maintained on that ground, and is restricted to cases which have their origin in intimate or confidential relations of the parties, and does not extend to ordinary cases of mutual accounts between creditor and debtor." (See, also, *Hosford v. Stone*, 6 Neb., 378; *Kinkaid v. Hiatt*, 24 Neb., 562.)

42

*Oglesby's Sureties v. State*, 11 S. W. Rep. [Tex.], 873, was a case very much like the one under consideration, and it was there held: "In an action against two distinct sets of sureties on the bonds of a collecting officer given for his first and second terms, respectively, allegations in the petition that plaintiff is unable to determine whether the defalcations complained of occurred during the first or during the second term, and that, therefore, all the sureties are joined that their equities may be adjusted and a multiplicity of suits avoided, are demurrable. The liability of each set of sureties is purely legal, and the facts alleged present no ground for equitable jurisdiction." We think this case is a correct enunciation of the law. We are aware that a contrary conclusion was reached in *State v. Churchill*, 3 S. W. Rep. [Ark.], 352, but we do not feel justified in adopting the conclusion reached in that case in view of the provisions of our constitution and statutes.

We conclude, therefore, that the learned district court erred in refusing the plaintiffs in error a jury for the trial of the issues of fact made by the pleadings in this case, for which its judgment is reversed and the cause remanded with instructions to permit the county, if it so desires, to file an amended petition at law against the plaintiffs in error upon paying all the costs of this action up to that time.

REVERSED AND REMANDED.