## AN INVALID SECTION IN THE WORKMEN'S COMPENSATION ACT.

Common Pleas Court of Franklin County.

STATE OF OHIO, EX REL EDWARD C. TURNER, ATTORNEY-GENERAL, ON BEHALF OF FRANK POND, v. PERCY FASSIG.

Decided, November 24, 1915.

*Constitutional Law—Right of Trial by Jury Denied by Workmen's Compensation Act—Void Provision for Submission of a Judicial Question to an Administrative Board—Careful Employer Entitled to Benefit of His Exercise of Greater Care—Action Against Employer for Failing to Comply with Order of Industrial Commission Not Maintainable.*

Section 27 of the workmen's compensation act (1465-74, General Code) is in contravention of the constitutional guaranty of right to trial by jury, and is therefore void and of no effect.

*Edward C. Turner*, Attorney-General, for relator.
*F. C. Rector*, for defendant.
*J. F. Rogers* and *McGhee, Davis & Boulger* filed briefs.

BIGGER, J.

The relator states in the petition that he is the duly elected, qualified and acting Attorney-General of the state of Ohio, and that he brings this action on behalf of Frank Pond, under and by virtue of Section 27 of the Workmen's Compensation Act of Ohio (103 O. L., 72). The relator states that the defendant is and was at the times complained of employing five or more workmen or operatives regularly in the same business, and in and about the same establishment in which the said Frank Pond was employed; that on or about August 22, 1914, said Frank Pond was injured in the course of his employment while in the service of said defendant; that said Frank Pond thereupon filed with the Industrial Commission of Ohio an application for compensation, which application was duly considered by said commission, and on December 22, 1914, a finding of facts and order

to employer was made, a copy of said finding of facts and order to employer being attached to the petition and marked Exhibit A and made a part of the petition. That on or about December 22, 1914, a duly certified copy of such finding of facts and order to employer was served upon the said Percy Fassig, who has wholly failed to comply with said finding and order, which required defendant to pay to said Frank Pond the sum of $186.13 as compensation up to December 22, 1914, and covering a disability of 16 3/7 weeks.

Relator further says that on or about January 26, 1915, the case was again before the commission for hearing and was duly considered by the commission and an additional finding of facts and order to employer made, which is attached by copy to the petition, and marked Exhibit B and made a part of the petition. That on or about the 26th day of January, 1915, a duly certified copy of such finding of facts and order to employer was served upon the said Percy Fassig, who has wholly failed to comply with said finding of facts and order, which finding of facts and order required the said Fassig to pay an additional sum of $40.46 as compensation, and $78 for medical expenses.

The relator prays judgment on behalf of said Frank Pond against the defendant Percy Fassig for a total sum of $417.88.

To this petition defendant has filed an answer. The first defense admits that the relator is the duly elected, qualified and acting Attorney-General of the state, and that he brings this action under and by virtue of Section 27 of the workmen's compensation act (103 O. L., 72); that the defendant was and is employing five or more workmen or operatives regularly in the same business and in and about the same establishment in which the said Frank Pond was employed. He admits that the said Frank Pond filed his application with the commission for compensation, and that the findings of facts and orders to the employer were made by the commission, as alleged in the petition; that the defendant has failed to comply therewith, and denies each and every other allegation in the petition.

For a second defense he says that if the said Frank Pond received any injuries as in the petition alleged they were not received in the course of his employment or while in the service

of the defendant, and were self-inflicted and solely the result
of his own negligence, in that with an infected pin the said
Frank Pond pricked his hand, as a result of which he suffered
or claimed to have suffered an attack of blood poison, for which
the defendant was in no respect responsible.

For reply the relator denies each and every allegation con-
tained in the second defense of the answer.

The issue thus having been made up, the defendant filed a
motion for judgment on the pleadings. It is the claim of coun-
sel for defendant that Section 27 of the workmens' compensation
act under and by virtue of which this action is brought, is in
conflict with the Constitution of the state, and that the petition
therefore states no cause of action against him. It is the claim
of defendant's counsel that Section 27 of the workmens' com-
pensation act is in conflict with Section 5 of Article I of the
Constitution, which provides that, "The right of trial by jury
shall be inviolate." This provision of the Bill of Rights of the
Constitution of the state was guaranteed by the ordinance of
1787 to the people of the Northwest Territory, and was em-
bodied in the Constitution of 1802 in practically the same lan-
guage. It is needless to indulge in platitudes concerning the
tenacity with which the English speaking people have insisted
upon this right and the boldness with which they have upheld
it against all encroachment of arbitrary power.

It is claimed, however, that the legislative authority for the
enactment of Section 27 of the workmen's compensation act is
to be found in Section 35 of Article II of the Constitution
adopted in September, 1912, and which reads as follows:

"For the purpose of providing compensation to workmen and
their dependents for injuries, death or occupational disease oc-
casioned in the course of such workmen's employment, laws may
be passed establishing a state fund to be created by compulsory
contribution thereto by employers and administered by the
state, determining the terms and conditions upon which pay-
ment shall be made therefrom, and taking away any and all
rights of action or defense from employees and employers. But
no right of action shall be taken away from any employee when
the injury, disease or death arose from failure of the employer
to comply with any lawful requirement for the protection of the

lives, health and safety of employees. Laws may be passed establishing a board which may be empowered to classify all occupations according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund and to determine all rights of claimants thereto.''

Prior to the passage of this amendment to the Constitution, the General Assembly had enacted a workmens' compensation act, but which did not contain the provision contained in Section 27 of the present act, and the Supreme Court decided that without this constitutional grant of power to the General Assembly, it already had such power in the exercise of the police power of the state. The court did not, however, have before it for decision the question of the right and power of the General Assembly to enact that in a controversy between two persons, and which does not at all involve the administration of the state insurance fund, one of the two persons may be compelled by law to submit to a board possessing only administrative powers the determination of a claim for damages which the other makes against him. The Supreme Court of the state of Ohio in the case of *State, ex rel*, v. *Creamer*, 85 O. S., 349, is not an authority upon the question of the constitutionality of Section 27 of the present act.

The question here presented is this: assuming that prior to the adoption of Section 35 of Article II of the Constitution, the defendant in this action was entitled to have the question of whether or not the plaintiff had suffered any injury and if so, what was its nature and extent, and the amount of damages to which he was entitled, submitted to and determined by the verdict of a jury, under instructions from the court as to the law in such a case, has the adoption of Section 35 of Article II taken away this right or in any manner abridged it?

A careful consideration of this provision of the Constitution fails to disclose any qualification or abridgment of the right of trial by jury, which has been one of the fundamental guarantees of our Constitution since its adoption and of the Constitution of 1802, and of the Ordinance of 1787, and the great charter of English liberty. Did the people of the state of Ohio, when

they adopted this article, have any reason to believe from its language that they were taking away or abridging the right to trial by jury which they and their ancestors had inherited from the mother country and which they had zealously preserved and perpetuated in these great instruments? If there had been any purpose in the minds of those who framed this article to take away or abridge this right to a trial by jury, we would naturally expect to find it in unequivocal language, so that he who runs might read it. What particular language contained therein can be pointed out as abridging this right if such right exists? The Attorney-General, in his brief, underscores this language: ''And taking away any and all rights of action or defenses from employees and employers.'' Plainly, that refers only to the case of such rights when the employer has paid his proportion to the state insurance fund. Was it intended to authorize the General Assembly to take away from an injured employee, when his employer had not paid his proportion to the fund, any and all right of action which he would have had against his employer but for the act? No such construction as that of this language is permissible. This section of Article II simply empowers the legislative branch of the government to create a state insurance fund for the benefit of workmen who are injured in the course of their employment, and to compel employers to contribute their proportionate share to the fund to determine the conditions on which such payment shall be made, to establish a board which shall collect and administer the fund and which board may be authorized to classify all occupations according to their degree of hazard, and to fix the rates of contribution to the fund in accordance with such classification and determine the rights of claimants to share therein.

There is in this section no warrant for legislative enactment that in a matter not affecting the fund and having no relation to fixing the amount to be paid by the employer into the fund, nor the collection of such amount for the benefit of the fund, that the commission in an action for damages between employee and employer may hear and determine whether a complainant is injured, and, if so, whether he received his injuries in the course

of his employment, and the nature and extent of the injuries, and then determine the amount under and in accordance with a scale of compensation fixed by legislative enactment, and order the employer to pay it for the benefit of the employee. It is plain, therefore, that if this power resides in the General Assembly, it must be found elsewhere than in the provisions of Section 35 of Article II of the Constitution. It is always to be kept in mind, in determining whether the General Assembly has exceeded its powers, that the Constitution vests the entire legislative power of the state in the General Assembly. The power of the national legislative body to legislate, unlike that of the state legislative body, is to be found only within the grant of legislative power contained in the Constitution of the United States. But our Constitution vests the entire legislative power of the state in the General Assembly. Therefore, when the question is presented to the court as to whether or not the General Assembly has exceeded its powers of legislation, the inquiry is not, has the power been granted to it, but it is restrained by the Constitution itself from exercising the power attempted to be exercised?

The Constitution does, in important respects, limit the General Assembly in the exercise of legislation. And one of the important limitations upon the exercise of the power of legislation is found in Section 5 of Article II, which provides that "The right of trial by jury shall be inviolate." Keeping in mind this restriction upon the General Assembly in the exercise of the power of legislation, does this section of the workmen's compensation act constitute a violation of the constitutional right of the defendant to a jury trial? And in approaching a decision of this important question, the court does not lose sight of the fact that it is an established rule, firmly settled by numerous decisions of courts and declarations of text-writers that a statute will not be declared unconstitutional in case of doubt, but will be sustained unless clearly unconstitutional. Furthermore, a statute will not be declared unconstitutional if the case can be disposed of on any other tenable ground. But the only contention here made by the defendant is that he is not liable for the reason that the section of this act under which it is sought

to hold him liable is a violation of his constitutional right to a trial by jury, and the petition states no cause of action against him, unless a statement showing his compliance with Section 27 of the workmen's compensation act, and the finding and order of the commission and the failure of the defendant to comply with the order is sufficient to show a right of action. The court, therefore, can not dispose of the question by the motion for judgment in his favor otherwise than by passing on the constitutionality of this section.

No more solemn duty can rest upon a court than that of upholding and defending the Constitution. Every judge of this state, before taking office, is required to take an oath that he will uphold the Constitution of the United States and the Constitution of the state of Ohio. This means that he will uphold it from attacks made upon it from any source. But it is always to be presumed that the General Assembly will pass no law which will be in violation of the Constitution, as the legislator equally with the judge is under oath to support the Constitution. This presumption, like that which the law entertains as to the innocence of one accused of crime, is to remain until the court is convinced beyond a reasonable doubt that an act of the General Assembly, the constitutionality of which is drawn in question, is unconstitutional.

Respecting the duty of a court under such circumstances, Judge Ranney said in *C., W. & Z. R. R. Co.* v. *Commissioners of Clinton County,* 1 O. S., 77, at pages 82 and 83:

"To adjudicate upon and protect these rights and interests, constitute the whole business of the judicial department. Each judge, before he is permitted to enter upon so important a duty, is required to bind his conscience by a solemn oath to support these constitutions. After all this, when he is clearly convinced their provisions have been violated, and the rights of the individual secured by them have been invaded by a legislative enactment, he has but one of two courses to pursue, either to regard his oath, vindicate the fundamental law and protect the rights of the individual citizen, or to give effect to an act of usurped authority. In such case, it can not be doubtful where the path of duty leads. The latter alternative can only be followed when we are to nullify all constitutional guarantees and

proclaim the legislative body, like the British Parliament, omnipotent. For, as stated by Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cranch, 137: 'To what purpose are powers limited, and to what purpose is that limitation committed to writing if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation?' "

The question then is, does Section 27 of this workmen's compensation act violate the constitutional guaranty to the defendant of the right of trial by jury in this case? And the first question, naturally, which arises is this. Has the defendant under the Constitution a right to a trial by jury of the right of Frank Pond, on whose behalf this action is prosecuted, to recover damages from him by reason of alleged injuries suffered by the said Frank Pond while in his employment? It is not every controversy that arises between individuals that must be tried to a jury. There is a large class of cases to which this constitutional guaranty has no application. In the Common Pleas Court of Franklin County one of the six judges is continually engaged in the trial of cases in which no right to a jury trial exists under the Constitution. When, therefore, in a given case a party asserts that under the Constitution he is entitled to a trial by jury, how is this question to be determined? This question was long ago decided in Ohio, and the same question has often been decided under the constitutions of other states in the same way. In the case of *Wilyard* v. *Hamilton*, 7 Ohio, 2d part, 111-118, it was decided under the Constitution of 1802 that:

"The only way in which we can ascertain the true meaning of this clause is by making inquiry whether before the Constitution was framed, jury trial was known in such cases in the territory of Ohio."

In the case of *Hagany* v. *Cohen*, 29 O. S., 82, the Supreme Court said, in deciding upon the constitutionality of a statute which it was claimed was in conflict with this provision of the

Constitution, "Nor is the statute in violation of Section 5 of Article I, which provides that the right of trial by jury shall be inviolate. The right thus secured was such as was recognized by the common law." Was the right of trial by jury, where one person sought to recover damages of another for a personal injury, recognized as a right before the adoption of the Constitution of 1851, and at the common law? Of this there can be no doubt. Under the Constitution of 1802 an action brought by one to recover damages, whether for injury to person or property, was triable by jury. It is only necessary to refer to the decisions of the Supreme Court embodied in the twenty volumes of Ohio Reports decided under the old Constitution in support of this statement. This was true in an action brought by an employee against his employer to recover for injuries due to the negligence of the employer. *Little Miami Railroad Co.* v. *Stevens,* 20 O., 415.

That it was the settled rule in such case at the common law is equally clear. We trace our rule of compensation for injury by award of damages to the Anglo-Saxon law. And at an early period it became an established rule that these damages were to be assessed by a trial by jury. On this subject, Sedgwick says, in his work on damages, at Section 17:

"At all events, at the period of the earliest systematic records of judicial proceedings in England, the jury had become the tribunal which disposed of the question of fact, and the amount of damages became a principal part of their jurisdiction."

The jury was not confined to a mere question of determining the fact of liability, but it was a principal part of the functions of the jury to determine the quantum of damages also. On this subject Sedgwick says at Section 9: "The quantum of damages being in most cases intimately blended with the questions of fact, must have been from the outset generally left with the jury."

To this there was and is now a well settled exception, and that is that on default the court itself might assess the amount of damages to be awarded. On this subject Sedgwick says:

"Yet, on the other hand, the old books are full of cases, where, on judgment by default and even on demurrer, the courts themselves fix the amount of damages; and the remains of this we see in the power still exercised by the English courts in cases of *mayhem*."

It may be observed in passing that the remains of this may be found in our statute law, Sections 11952 and 11954 of the General Code, which provide that upon default for answer the court may hear the proof and assess the damages or refer the case to a referee or master for such purpose or direct the matter to be ascertained by a jury as the action requires. It seems that in the early laws of the Anglo-Saxons the quantum of damages was arbitrarily fixed by the law maker, and this was true in some of the most ancient legal codes. There were similar provisions in the Jewish law. On this subject Sedgwick says at Section 9:

"It is a curious fact that the laws of remote and barbarous periods show the most minute care in fixing the amount of compensation to be recovered by way of damages."

This list of personal injuries was most minute as far back as the sixth century, fixing a certain amount as compensation to be recovered for pulling the hair, a certain other amount if the scalp was injured. It fixed the amount to be paid for the loss of a front tooth, and another amount for the tooth next to the front tooth, and a certain amount for the great toe nail, and a certain amount less for the loss of every other toe nail. This simply illustrates the great minuteness of the law as to the compensation to be paid in personal injury cases under this ancient law. With reference to this classification of personal injuries by the law making power, Mr. Sedgwick observes at Section 11:

"Perhaps this is evidence of a civilization gradually increasing, and a jurisprudence slowly improving; for feeble certainly, and unreliable, must be the tribunal charged with the task of imposing damages in civil suits, if the legislator considers it unsafe to be trusted with the assessment of the amount. This

elaborate and minute specification, therefore, though on its face appears to indicate the care and watchfulness of the law giver, on a closer examination furnishes a stronger proof of his distrust of the judiciary. Arbitrary rules, which do not bend to the justice of the particular matter, especially when used to fix values, are always a misfortune and a defect in jurisprudence; they should never be tolerated, unless on account of some peculiar and extraordinary difficulty in arriving at the truth of the individual case.''

It thus appears that from an early period in the history of the common law in actions for the recovery of damages for personal injuries they were assessed by a jury under instructions from the court as to the law applicable to the particular case. The Supreme Court has already decided that in the administration of this fund, the commission acts only in an administrative capacity. But, after the most pains-taking investigation, I have been unable to find any authority anywhere for the view that an administrative board may hear and determine a claim for damages before default, and assess the amount of damages to be recovered, leaving only to a court and jury the question of general liability. If this power may be exercised by a commission in the case of some controversies of this character between employer and employee, why not in all? Indeed it would seem that it would be a more equitable system if the General Assembly, after prescribing the amount of compensation to be recovered for particular injuries, had made the provisions of Section 27 applicable to all cases where an employee sought to recover damages from his employer. Under the present system, which creates a general insurance fund out of which claims are to be paid, the careful employer is required to pay as large an amount as the most negligent. But under the provisions of Section 27 the careful employer would derive the benefit of his exercise of greater care in the lesser number of injuries for which he would be held liable, which incentive to care is wanting under the system of contribution in proportion to the number of employees. The General Assembly evidently had some doubt of the constitutionality of this method of determining the right of an employee, as between himself and his employer, to dam-

ages; for it undertook to provide for a trial in court in case the employer should refuse or neglect to make payment in accordance with the finding or judgment of the commission. But what is the nature of the trial which is to be had in court? Upon the trial in court the statute provides that the amount found and determined by the commission "shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the board." This, of course, precludes any inquiry in court as to the nature and extent of the injuries and as to the amount which should be allowed in damages therefor. We have here, then, an attempt by a legislative enactment to divide between a mere ministerial body and the court the determination of questions which at the time of and long prior to the adoption of the Constitution of 1851, had been performed exclusively by the courts, that is, by a jury in court under the direction and instruction of the judge as to the rules of law which should govern the jury in assessing damages. When the people of the state provided in their Constitution that the right of trial by jury shall be inviolate, this meant the right to a trial by jury as it had long existed, and this, as we have seen, was the right to have the jury pass upon and decide the nature and extent of the injuries and assess the amount to be allowed therefor under the direction of the court as to the rules of law which should govern them in such cases. Shall the court, therefore, hold that a legislative act which takes from the jury this power, does not violate this constitutional guaranty? It is beyond the legislative power to either take away or abridge this right in those cases where it existed antecedent to the adoption of the Constitution. If it may be abridged by taking away a part of the functions of the jury, why may not all be taken away by legislative enactment? Is it any less important to one who is sued for damages to have the jury pass upon the nature and extent of the injuries of the plaintiff and assess the amount to be recovered therefor, than to have them pass upon the question of his liability? But whether of greater or less importance, it is sufficient to say that the right of trial by jury as it existed prior to the adoption of the Constitution was the right to have

those questions submitted to and decided by a jury, and that this right of the defendant in this case thus guaranteed by the Constitution can not be and has not been affected by the enactment of Section 27 of the workmen's compensation act. While the question of the constitutionality of this section does not seem to have been decided as yet in Ohio in any reported case, we are not left to travel an unbeaten path, for the courts of last resort in this country have had under consideration the validity of legislative acts claimed to have violated this constitutional right and which very clearly are in point as to the facts involved and the principle announced. It is true that not many reported cases are found where the constitutionality of a legislative act which undertook to divide between a merely ministerial body and the court the decision of the right of a party to recover damages from another has been drawn in question. The paucity of such decisions it is fair to assume is due to the fact that the constitutional right to a jury trial in such cases is so clear that legislative bodies have very seldom undertaken to enact such legislation.

In the case of *King* v. *Hopkins*, 57 N. H., 334, it was decided by the Supreme Court of that state that:

"That part of Section 13, chapter 97, of the laws of 1874, which provide that upon a trial by jury of a case which has been referred under the act the report of the referee shall be evidence of all the facts stated therein, subject to be impeached, and so much of Section 3, chapter 35, of the laws of 1875 as makes provision to the same effect are unconstitutional and void."

In that case the finding of the referee was only made evidence of the facts subject to be impeached, while in the case at bar the findings of the commission are not subject to be impeached, but are conclusive on the jury, and yet it was held this was an invasion of the right of a party to have a jury trial by the course of the common law. The judge delivering the opinion in that case says:

"And when my brother Ladd inquires whether the people of New Hampshire in 1792 intended to secure for themselves and

their posterity nothing more than a trial in which judgment should be rendered on the verdict that 'the jury find that the auxilliary decision is not shown to be wrong,' I am compelled to confess that I see but one answer that can be given to the question without doing violence to all ideas of a legal and all sense of a constitutional character. If the constitutional jury trial is no more than that, it is nothing at all; for the legal substance of jury trial (in whatever sense it is understood) may be abolished by a great variety of ingenious statutes. If a jury can be compelled to give their verdict, not upon the issue between the parties, but upon the question whether an auxilliary decision of that issue is right, giving to that auxilliary decision, as evidence of its own correctness, such weight as the Legislature choose to prescribe, the constitutional guaranty of jury trial is a delusion; and if that guaranty can be repealed by legislative circumlocution, every other constitutional guaranty is a constitutional farce.''

By the statute of the state of Montana, a railroad company was made liable for killing live stock which might stray upon its track, and the act provided that the owner might file an affidavit stating his ownership with an officer or agent of the company and that thereupon each party should select one appraiser, and the two thus appointed should select a third, who should appraise and fix the value of the stock killed. The statute then provided that the railroad company should pay to the owner the amount thus fixed or determined by the appraisers, and if within thirty days the company did not make payment, suit might be brought in any court of competent jurisdiction, and upon trial the appraisement was to be taken as conclusive evidence of the value of the stock. This was held to be a violation of the constitutional right to a trial by jury. In this case, like the one at bar, the law made the findings of the appraisers conclusive upon the jury.

In the case of *Plimpton* v. *Somerset*, 33 Vt., 283, it was decided by the Supreme Court of that state that:

''Any law which materially impairs the right of trial by jury according to the course of the common law, in cases proper for the cognizance of a jury, is contrary to the twelfth article of the Bill of Rights and Section 31 of the Constitution of

Vermont. These constitutional provisions apply to all controversies to be tried by a jury according to the rules of the common law, notwithstanding the particular right for the violation of which the action is brought, did not exist by common law, but was created by a statute passed subsequent to the adoption of the Constitution. The act of 1856, providing for a compulsory reference of suits at law, and which makes the referee's report *prima facie* evidence of the facts therein reported, in case either party claims a trial by jury, does, so far as it applies to actions suitable for trial by jury according to the course of the common law, impair the right to such jury trial as is guaranteed by the Constitution of Vermont, and it is therefore void."

The General Assembly in this act recognizes the controversy between the plaintiff and defendant as one fit and proper to be tried by a jury, for it expressly provides that an injured employee may bring an action in court to recover damages from the employer when the employer fails to pay his proportionate share to the insurance fund, where, of course, such cases have always been tried to a jury. The same principle is involved in all those cases where a compulsory reference has been made in purely legal actions for the determination of questions of fact, and it has uniformly been held by courts of last resort that such reference is an infringement of the constitutional right to a trial by jury.

In the case of *Cutler & Hinds* v. *Richley,* 151 Pa. St., 195, it was decided that:

"The local act of April 6, 1870, P. L., 948, providing a special voluntary mode of procedure before a single legal arbitrator learned in the law, without right of appeal, is constitutional; but the supplement of March 25, 1873, P. L., 396, substituting in lieu of the voluntary a compulsory mode of procedure, is unconstitutional." See also *United States* v. *Rathbone,* Federal cases, No. 16121; *Kinkead* v. *Hiatt,* 24 Neb., 562; *Kuhl* v. *Pierce Co.,* 44 Neb., 584; *Bornheim* v. *Waring,* 79 N. C., 56.

It can not be claimed that because the industrial commission is clothed with power to administer the state insurance fund, in the discharge of which duty it acts in a purely administrative and ministerial capacity in deciding facts necessary to be

determined in the administration of the fund, that this will authorize the General Assembly to confer upon it judicial powers and authorize it to usurp the province of a jury in an action at law for damages. This provision of this act is in no wise connected with the duties of the industrial commission in the collection and disbursement of the insurance fund. When the industrial commission determines the right of an applicant to share in the fund, it acts purely in a ministerial capacity. It makes no judicial finding against any citizen in any controversy between him and another, the effect of which is to fix upon him a legal liability to pay damages. The first power it may rightly exercise, the second it may not.

The workmen's compensation law is one of the most beneficent acts passed by the General Assembly of this state in recent years. It is in no wise weakened by this ruling, the only effect of which is to require an injured employee who is not entitled to share in the fund under the terms of the act, to bring his action against the employer in the courts where the employer may have a trial by jury, a right guaranteed him in the Constitution.

I have not considered the question whether this section is in violation of other provisions of the Constitution, as the only contention made on behalf of the defendant is that it is in violation of Section 5, Article I.

Having reached the conclusion upon mature consideration that this Section 27 of the act is void, it follows that the petition states no cause of action against the defendant, and for that reason his motion for judgment in his favor upon the pleadings must be sustained.